UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Steven J. Shaffer

    v.

Berry Dunn McNeil &
Parker, LLC

Civil No. 25-cv-227-LM-TSM
Opinion No. 2026 DNH 028 P

## **O R D E R**

Plaintiff Steven J. Shaffer brings this action against the auditing firm Berry Dunn McNeil & Parker, LLC ("Berry Dunn"), alleging claims for defamation per se and intentional interference with contractual relations. The action is based upon a letter that Berry Dunn sent to Shaffer's then-employer, Littleton Regional Healthcare ("Littleton Regional"), informing Littleton Regional that Berry Dunn would no longer be serving as Littleton Regional's independent auditor based on Berry Dunn's "reservations regarding [Shaffer's] trustworthiness." Doc. no. 22-2 at 2. Presently before the court is Berry Dunn's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. no. 22. Shaffer objects. Doc. no. 29. For the following reasons, Berry Dunn's motion (doc. no. 22) is denied.

## **STANDARD OF REVIEW**

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A.,

772 F.3d 63, 68, 71 (1st Cir. 2014) (quotation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Analyzing plausibility is "a context-specific task" in which the court relies on its "judicial experience and common sense." Id. at 679.

Ordinarily, in evaluating a 12(b)(6) motion, the court may consider only the facts alleged in the complaint, exhibits attached to the complaint, and other materials that are fairly incorporated in the complaint. Alt. Energy Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001). "There is, however, a narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to [the] plaintiffs' claim; or for documents sufficiently referred to in the complaint.'" Id. (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). "When the complaint relies upon a document, whose authenticity is not challenged, such a document 'merges into the pleadings' and the court may properly consider it under a Rule 12(b)(6) motion to dismiss." Id. (quoting Beddall v. State St. Bank & Tr. Co., 137 F.3d 12, 17 (1st Cir. 1998)).

## BACKGROUND[1]

Littleton Regional employed Shaffer as its Chief Financial Officer from September 2021 to July 2024. Shaffer resided in Florida at all times while working

---

[1] The following facts are drawn from Shaffer's complaint except where otherwise noted.

for Littleton Regional, which is based in New Hampshire. Berry Dunn served as Littleton Regional's independent auditor for many years, including during the time that Littleton Regional employed Shaffer.

In or around January 2022, Shaffer asked Berry Dunn to look into whether Littleton Regional would qualify for the Employee Retention Tax Credit ("Retention Credit"), a COVID-era refundable tax credit for certain eligible businesses and tax-exempt organizations affected by the pandemic. Berry Dunn opined that Littleton Regional did not qualify for the Retention Credit. In April 2022, at the request of Littleton Regional's management, Shaffer sought a second opinion from another accounting firm. The second accounting firm opined that Littleton Regional did qualify for the Retention Credit. Shaffer thereafter worked with that firm to obtain the Retention Credit for Littleton Regional. Littleton Regional ultimately obtained Retention Credit benefits valued at around $10 million.

After Shaffer notified Berry Dunn that Littleton Regional had obtained Retention Credit benefits, Berry Dunn informed Littleton Regional that it should be prepared to return any Retention Credit benefits to the Internal Revenue Service and urged Littleton Regional to reserve all the Retention Credit money. Littleton Regional reserved some of the Retention Credit money but also opted to use some of the funds to pay for operating expenses.

For his role in securing Retention Credit funds, Littleton Regional rewarded Shaffer with a raise and a bonus payment. During Shaffer's time with Littleton

Regional, he achieved pay raises on a regular basis and did not receive any negative performance reviews.

On April 30, 2024, Shaffer had dinner with Jeffrey Walla, a principal of Berry Dunn. Shaffer and Walla discussed reconciling certain differences they had regarding Littleton Regional's 2023 audit and the Retention Credit.

On May 9, 2024, Walla wrote a letter to Littleton Regional's Chief Executive Officer ("CEO"), Robert Nutter, and to Littleton Regional's chairman, Jeff Woodward. The letter stated in pertinent part as follows:

> We have enjoyed our relationship with [Littleton Regional] over the past several years as your independent auditor. Effective today (May 9, 2024), after substantial deliberations we ceased our services as your auditor. The decision was reached reluctantly and influenced by your choice to retain your current Chief Financial Officer despite the candid discussion we had about our mutual reservations regarding his trustworthiness. We harbor concerns that the requisite transparency and integrity essential for a successful and professional audit would not be adequately met under current leadership.
>
> We are committed to help you make a smooth transition with your new auditor. Please be aware that we are professionally required to respond to inquiries regarding management integrity and the reasons for our disengagement of the audit relationship. . . .

Doc. no. 22-2 at 2.[2]

---

[2] Walla's letter is not attached to Shaffer's complaint; Berry Dunn attached the letter to its motion to dismiss. See doc. no. 22-2. Walla's letter is central to Shaffer's claims, the complaint refers to Walla's letter, and Shaffer does not question the authenticity of the letter as reproduced by Berry Dunn. Thus, the court may appropriately consider the letter in ruling on Berry Dunn's motion. Alt. Energy Inc., 267 F.3d at 33.

Although addressed to Nutter and Woodward, other Littleton Regional employees viewed Berry Dunn's letter, and Shaffer was made aware of the letter by persons other than Nutter and Woodward.

One day after Littleton Regional received Walla's letter, Shaffer was called to a private meeting with Nutter and Woodward. At that meeting, Shaffer alleges he was verbally reprimanded for reasons unrelated to his trustworthiness. The complaint does not specify what Shaffer was reprimanded for, other than acknowledging that "the rationale for his reprimand was conveyed to" Shaffer, though "he never received any proof or documentation of same, despite repeated requests." Doc. no. 1 at 5.

On May 13, 2024, Shaffer received a letter from Littleton Regional's management.[3] The letter established restrictions on Shaffer's employment, requiring him to work remotely 100% of the time.[4] In addition, the letter set forth that Shaffer was only allowed to communicate with his staff via email and that he could not have unsupervised or unauthorized contact with any current or former employees. Finally, the letter stated that Shaffer was required to virtually attend and record all meetings.

Shaffer complied with these requirements. However, in July 2024, Littleton Regional terminated his employment. The basis for his termination is not clear.

---

[3] Neither party has provided a copy of this letter.

[4] Given the complaint's allegation that Shaffer maintained his Florida residence at all times while working for Littleton Regional, it is unclear how often (if at all) Shaffer worked onsite at Littleton Regional before this point.

**DISCUSSION**

Shaffer brings two claims against Berry Dunn: (1) defamation per se and (2) intentional interference with contractual relations. Berry Dunn moves to dismiss both claims. The court will first discuss Shaffer's defamation claim before addressing his tortious interference claim.[5]

I.   <u>Defamation</u>

To succeed on a defamation claim under New Hampshire law, the plaintiff must demonstrate that the defendant failed to exercise reasonable care in publishing to a third party a statement of fact about the plaintiff that is both false and defamatory.[6] <u>Richards v. Union Leader Corp.,</u> 176 N.H. 789, 797 (2024) "Embedded in this recitation is the requirement that a challenged statement be one 'of fact.'" <u>Automated Transactions, LLC v. Am. Bankers Ass'n,</u> 172 N.H. 528, 532 (2019) (quoting <u>Pierson v. Hubbard,</u> 147 N.H. 760, 763 (2002)). "Conversely, 'a statement of opinion is not actionable unless it may reasonably be understood to

---

[5] Although Shaffer resided in Florida while working for Littleton Regional, he asserts in his objection to Berry Dunn's motion to dismiss that his claims arise under New Hampshire law, and Berry Dunn does not contest that assertion. Neither party has asserted that New Hampshire law differs from Florida law in any material way for purposes of Shaffer's claims or their arguments for and against dismissal. Accordingly, the court sees no need to conduct a choice-of-law analysis and analyzes the parties' arguments under New Hampshire law.

[6] A statement accusing a person of engaging in activities that would tend to injure him in his trade or business is defamatory per se. <u>Martin v. Mooney,</u> 448 F. Supp. 3d 72, 84 (D.N.H. 2020). While a statement that is defamatory per se obviates the requirement that a plaintiff prove damages with specificity, <u>Lassonde v. Stanton,</u> 157 N.H. 582, 593 (2008), the required showing for a claim of defamation per se does not otherwise materially differ from what a plaintiff must prove on a traditional defamation claim, <u>Martin,</u> 448 F. Supp. 3d at 84-85.

imply the existence of defamatory fact as the basis for the opinion.'" Id. (brackets omitted) (quoting Thomas v. Tel. Publ'g Co., 155 N.H. 314, 338 (2007)). "Whether a given statement can be read as being or implying an actionable statement of fact is a question of law to be determined by the trial court in the first instance." Id. at 533. In answering this question, the court must consider the context of the publication as a whole. Gascard v. Hall, 175 N.H. 462, 465 (2022).

"An important criterion for distinguishing statements of opinion from statements of fact is verifiability, i.e., whether the statement is capable of being proven true or false." Automated Transactions, 172 N.H. at 533. "Where an expressive phrase, though pejorative and unflattering, cannot be objectively verified, it belongs squarely in the category of protected opinion." Id. (quoting Piccone v. Bartels, 785 F.3d 766, 772 (1st Cir. 2015)). "Ethical standards," for example, "are inherently subjective," and an assertion that a person has "low ethical standards" is not "capable of verification." Catalfo v. Jensen, 657 F. Supp. 463, 468 (D.N.H. 1987).

"Of course, even if a statement is properly described as an opinion, that 'does not automatically shield it from a defamation claim. After all, expressions of opinion may often imply an assertion of objective fact.'" Automated Transactions, 172 N.H. at 534 (quoting Yohe v. Nugent, 321 F.3d 35, 41 (1st Cir. 2003)). "At the same time, 'even a provably false statement is not actionable when an author outlines the facts available to him, thus making it clear that the challenged statements represent his own interpretation of those facts.'" Id. (ellipsis omitted) (quoting Riley v. Harr, 292

F.3d 282, 289 (1st Cir. 2002)); see Piccone, 785 F.3d at 772-73 (explaining that, even if statement that plaintiff was "unprofessional" was provably false, it was not actionable because defendant disclosed the facts upon which he based his statement). "When the speaker discloses the facts upon which he bases his statement, 'no reasonable reader would consider the term anything but the opinion of the speaker drawn from the circumstances related.'" Automated Transactions, 172 N.H. at 534 (brackets omitted) (quoting Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1093 (4th Cir. 1993)).

In this case, Shaffer alleges that Berry Dunn defamed him when Walla stated on behalf of Berry Dunn in a letter to Littleton Regional's CEO and chairman that Berry Dunn harbored "reservations regarding [Shaffer's] trustworthiness" and "concerns that the requisite transparency and integrity essential for a successful and professional audit would not be adequately met under current leadership." Doc. no. 22-2 at 2. Shaffer concedes there is "no doubt" that Berry Dunn's statements about Shaffer "constitute statements of opinion." Doc. no. 29 at 4. However, Shaffer maintains he has alleged a plausible defamation claim because Berry Dunn's letter does not outline the factual basis for its opinions.

It is true that the letter itself does not state the basis for Berry Dunn's opinions regarding Shaffer's trustworthiness and integrity. However, it does state that Walla had a "candid discussion" with Woodward and Nutter regarding the three men's "mutual reservations regarding [Shaffer's] trustworthiness." Doc. no. 22-2 at 2. When read in context, it appears that Berry Dunn's opinions are based

8

upon concerns shared in a previous conversation with Woodward and Nutter. Berry Dunn argues that, because the letter demonstrates that it had previously disclosed the factual basis for its opinion to the letter's addressees, the letter cannot be read to imply the existence of undisclosed defamatory facts.

The problem with Berry Dunn's argument is that, accepting the complaint's allegations as true, it is reasonable to infer that Berry Dunn published the letter to persons other than Woodward and Nutter. Shaffer alleges that the author and addressees of the letter were not the only persons who viewed it, but also that Berry Dunn published the letter to support personnel with Littleton Regional. Shaffer also alleges that he was made aware of the letter by persons other than Woodward and Nutter. Drawing all reasonable inferences in Shaffer's favor, he plausibly alleges that Berry Dunn published the letter to persons who were not present at the previous "candid discussion" where all three high-level executives expressed their "mutual reservations" regarding Shaffer's trustworthiness.

New Hampshire defamation law generally accords with the Restatement (Second) of Torts. See McCarthy v. Manchester Police Dep't, 168 N.H. 202, 210 (2015) (citing § 577 of the Restatement with approval); Duchesnaye v. Munroe Enters., Inc., 125 N.H. 244, 253 (1984) (Souter, J.) (same). The Restatement takes a broad view of what constitutes publication: "Any act by which the defamatory matter is intentionally or negligently communicated to a third person is a publication." Restatement (Second) of Torts § 577 cmt. a (A.L.I. 1977) [hereinafter "Restatement"]; see also Duchesnaye, 125 N.H. at 253 ("Publication to one person

other than the plaintiff is actionable."). "The fact that the defamatory matter is communicated to an agent of the defamer does not prevent it from being a publication sufficient to constitute actionable defamation." Restatement § 577 cmt. e. By way of further example, when a defendant delivers a defamatory message to a telegraph company for transmission to the person defamed, the defendant has published the message to the employee of the telegraph company that receives the message, even though that employee is merely being tasked with conveying the message to the plaintiff. Id. cmt. g. The Restatement even provides that, when a defendant dictates defamatory material to a stenographer who takes shorthand notes, the defendant has published the material to the stenographer "even though the notes are never transcribed nor read by the stenographer or any other person." Id. cmt. h.

Furthermore, the publication need only be negligent. Id. cmt. a. "If a reasonable person would recognize that an act creates an unreasonable risk that the defamatory matter will be communicated to a third person, the conduct becomes a negligent communication," and a "negligent communication amounts to a publication just as effectively as an intentional communication." Id. cmt. k. The breadth of what constitutes an actionable negligent publication is demonstrated by the following illustration:

> A writes a defamatory letter to B and sends it to him through the mails in a sealed envelope. A knows that B is frequently absent and that in his absence his secretary opens and reads his mail. B is absent from his office and his secretary reads the letter. A has published a libel.

Id. cmt. k, illus. 6.

10

In this case, accepting the complaint's factual allegations as true and drawing all reasonable inferences in Shaffer's favor, he has plausibly alleged that Berry Dunn published the letter to support personnel at Littleton Regional to whom Berry Dunn failed to communicate the factual basis for its opinion. Indeed, Shaffer alleges that he received a copy of the letter from a Littleton Regional employee who was not one of the letter's addressees. Because there is no allegation that such employees were privy to the previous discussions between Walla, Woodward and Nutter, and because the letter does not state the factual basis for Berry Dunn's opinions regarding Shaffer's trustworthiness and integrity, such a person could read Berry Dunn's letter as implying the existence of undisclosed defamatory facts. See Automated Transactions, 172 N.H. at 533; see also Duchesnaye, 125 N.H. at 249 ("[A] statement in the form of an opinion may be read to imply defamatory facts, and it is actionable if it is actually understood that way.").

Berry Dunn nevertheless seeks dismissal of Shaffer's defamation claim on grounds of qualified privilege. New Hampshire law recognizes a qualified or conditional privilege for otherwise defamatory statements. Collins v. Univ. of N.H., 746 F. Supp. 2d 358, 373 (D.N.H. 2010). A qualified privilege exists "if the facts, although untrue, were published on a lawful occasion, in good faith, for a justifiable purpose, and with a belief, founded on reasonable grounds of its truth," and where "the statements are not made with actual malice." Simpkins v. Snow, 139 N.H. 735, 740 (1995) (quoting Chagnon v. Union Leader Co., 103 N.H. 426, 438 (1961)). The burden is on the defendant to show the existence of the privilege, but the plaintiff

has the burden of showing that the defendant acted with malice. Collins, 746 F. Supp. 2d at 373.

While Berry Dunn may ultimately be able to show that the privilege applies, "the question whether the defendant is entitled to claim the privilege is one for the trier of fact." Cross v. Anderson, No. CV-00-51-M, 2000 WL 1867747, at *2 (D.N.H. Dec. 18, 2000) (quoting Pickering v. Frink, 123 N.H 326, 329 (1983)). "Such a factual determination should be made, at the earliest, on a motion for summary judgment after the parties have had an opportunity to support or refute the allegations in the pleadings." Id. (quoting Pickering, 123 N.H. at 331). Thus, the qualified privilege provides no basis at this early stage to dismiss Shaffer's defamation claim.[7] Berry Dunn may renew its assertions of a qualified privilege at summary judgment.

Finally, and outside the context of any asserted common-law privilege, Berry Dunn appears to argue that Shaffer fails to state a plausible defamation claim because its letter was consistent with best practices of the auditing industry and because it was authored in Berry Dunn's capacity as Littleton Regional's auditor. Berry Dunn cites no authority for the proposition that an allegedly defamatory communication may be immunized from liability for these reasons and the court is unaware of any such authority. Berry Dunn fails to demonstrate that it is entitled to dismissal of Shaffer's defamation claim on this basis.

---

[7] For the same reasons, the court need not address Berry Dunn's argument that the New Hampshire Supreme Court recognizes the separate qualified privilege set forth in Section 595 of the Restatement. Even assuming the Supreme Court has adopted this privilege or would do so, this court could not resolve the applicability of that privilege on a 12(b)(6) motion.

For these reasons, Berry Dunn has not shown that it is entitled to dismissal of Shaffer's defamation claim.

II.    <u>Intentional Interference with Contractual Relations</u>

To succeed on a claim for intentional interference with contractual relations, a plaintiff must demonstrate that: "(1) the plaintiff had an economic relationship with a third party; (2) the defendant knew of the relationship; (3) the defendant intentionally and improperly interfered with this relationship; and (4) the plaintiff was damaged by such interference." Hughes v. N.H. Div. of Aeronautics, 152 N.H. 30, 40-41 (2005) (emphases omitted). Berry Dunn argues that Shaffer has failed to plausibly allege the third and fourth elements.

Regarding the third element (intentional and improper interference), Berry Dunn argues that its motivation in sending the letter was its belief that Littleton Regional did not qualify for the retention credit, and that it had no desire to interfere with Shaffer's employment. However, accepting the complaint's allegations as true and drawing all reasonable inferences in Shaffer's favor, Shaffer has alleged facts which make plausible the inference that Berry Dunn desired to harm Shaffer. The complaint alleges that Berry Dunn rendered a professional opinion that Littleton Regional did not qualify for the Retention Credit, but Shaffer worked with another auditing firm to obtain Retention Credit funds anyway. Then, when Berry Dunn urged Littleton Regional to reserve the funds, Littleton Regional did not heed Berry Dunn's warning, and instead rewarded Shaffer with a raise and a bonus. The complaint also alleges that, mere days before Walla penned the letter, he met with

13

Shaffer to discuss their ongoing disagreement regarding both the Retention Credit funds and Littleton Regional's 2023 audit. Construing the allegations in the light most favorable to Shaffer, it is reasonable to infer that Berry Dunn desired to interfere with Shaffer's employment because of its longstanding disagreement over Shaffer obtaining Retention Credit benefits.[8]

Berry Dunn next argues that Shaffer has failed to plausibly allege intentional and improper interference because, as Littleton Regional's independent auditor, it was not a stranger to the economic relationship between Shaffer and Littleton Regional. Berry Dunn's argument is not persuasive. To prevail on a tortious interference claim, Shaffer must show that Berry Dunn was not a party to the contract it interfered with. Tessier v. Rockefeller, 162 N.H. 324, 338 (2011) ("[T]ortious interference with a contractual relationship requires interference by one who is not a party to the contract."). Shaffer is not required to demonstrate that Berry Dunn lacked its own contractual relationship with Littleton Regional.

Regarding the fourth element of Shaffer's interference claim (damage resulting from interference), Berry Dunn asserts that Shaffer has failed to plausibly allege that his discipline or termination stemmed from the letter. However, accepting the complaint's allegations as true and construing those allegations in the light most favorable to Shaffer, Shaffer has alleged facts which make plausible the inference that Berry Dunn's conduct damaged Shaffer. Shaffer alleges that he

---

[8] For the same reason, Berry Dunn's arguments that its intent was simply to terminate its relationship with Littleton Regional in order to protect its own legitimate interests provide no basis for dismissal at this early stage.

consistently received positive performance reviews and achieved regular pay raises prior to Littleton Regional's receipt of the letter. One day after Nutter and Woodward received the letter, they verbally reprimanded Shaffer. Within a week, Littleton Regional imposed restrictions on Shaffer's employment. While Littleton Regional's stated basis for Shaffer's May 2024 reprimand and discipline was for reasons other than his trustworthiness, the close temporal proximity between the letter and these disciplinary measures, along with Shaffer's competent work before that point, permit the reasonable inference that the letter led to the reprimand and restrictions. See Madeja v. MPB Corp., 149 N.H. 371, 383 (2003) (explaining that close temporal proximity may permit a factfinder to infer causation). Shaffer also alleges that, despite complying with the restrictions imposed on his employment in May 2024, Littleton Regional fired him. In short, Shaffer has made plausible factual allegations which, if accepted as true, would permit a factfinder to reasonably infer that Shaffer experienced damage as a result of Berry Dunn's conduct.

For these reasons, Berry Dunn has not shown it is entitled to dismissal of Shaffer's interference claim.[9]

---

[9] Berry Dunn has not argued that Shaffer failed to plausibly allege that the letter contains untruthful information. See Tsiatsios v. Anheuser-Busch, Inc., Civ. No. 07-CV-003-JL, 2009 WL 114557, at *5 (D.N.H. Jan. 16, 2009) ("Under New Hampshire law, interfering with contractual relations is not improper—and thus not tortious—where the defendant merely relayed truthful information to a third party . . . ."); Restatement § 772 cmt. b (cited with approval in Montrone v. Maxfield, 122 N.H. 724, 726 (1982)) ("There is of course no liability for interference with a contract . . . on the part of one who merely gives truthful information . . . whether or not the information is requested."). As such, the court does not consider this possibility.

## CONCLUSION

Berry Dunn's motion to dismiss (doc. no. 22) is denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 25, 2026

cc:    Counsel of Record